IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CGL, LLC | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| WILLIAM G. SCHWAB, et al. | : | NO. 11-CV-4593 |
| | : | |

**MEMORANDUM**

DITTER, J.                                                                                    April 2, 2014

The present case comes before me on cross-motions for summary judgment. The

plaintiff, CGL, LLC, alleges that the defendant, William Schwab, Esquire, the Chapter 7 Trustee

of real property in Lancaster County, sold property in violation of a plot-plan restriction without

affording CGL due process.

## I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Prior to 2007, Vistacare Group, LLC, owned a parcel of real estate in East Cocalico

Township, upon which it operated Parkside Manor Retirement Community. Parkside contained

45 lots. Lots 1-44 were zoned and subdivided for occupation by individual mobile home

residences.[2] On Lot 45, Vistacare had maintained an assisted-living facility. All 45 lots were

subject to restrictions established in a land development plan for Parkside which East Cocalico

Township had approved and accepted for recording in 1984. Restriction No. 1 provided as

follows:

> Fee title to the lots shown on this plan will
> not be transferred to the parties having residences
> constructed upon the said lots, but the title
> will remain in the Developer, his heirs and assigns.

---

[1] Where the facts are agreed, I have not cited to the record.

[2] Upon initiation of this suit, only 30 of the 44 lots contained residences. The individuals residing upon the
30 lots are the individuals who were added as defendants in the Plaintiff's amended complaint (hereinafter referred
to as the "Resident Defendants").

On May 7, 2007, Vistacare sought relief in the United States Bankruptcy Court for the

Middle District of Pennsylvania and Schwab was appointed as Chapter 7 Trustee to manage the

bankruptcy estate. On July 24, 2008, in an effort to liquidate Vistacare's assets, Schwab filed a

motion in the Bankruptcy Court seeking permission to sell Parkside either as one parcel or as two

separate parcels.[3] *Def.'s Br.*, Exh. A.[4]  Schwab's motion stated that the sale of Parkside as two

separate parcels would remain contingent upon approval by the Township of the modification of

Restriction No. 1 to allow Lot 45 and Lots 1-44 to be separated. *Id.*  On August 21, 2008, the

Bankruptcy Court approved the sale of Parkside "free and clear of all liens and encumbrances"

by means of a public auction. *Def.'s Br.*, Exh. B.

Schwab arranged a public auction for the sale of Lots 1-44 and Lot 45 for September 27,

2008; however, in light of the Resident Defendants' objections to the sale of Lots 1-44, Schwab

offered only Lot 45 at the public auction. *See Schwab Dep.* 68-69, Feb. 5, 2013.  Grant Wise,

who is the sole member of CGL, successfully purchased Lot 45 for $177,500 at auction.[5]  On

November 12, 2008, Mark Yoder, Esquire, who is CGL's counsel, emailed Thomas Goodman,

Esquire, the Township's attorney, requesting confirmation that Restriction No. 1 did not apply to

Lot 45. *See Resident Defs.' Br.*, Exh. F.  Goodman responded that the Township would not

---

[3] If Schwab had sold Parkside as two parcels, the first parcel would have consisted of Lots 1-44 and the second parcel, Lot 45.

[4] I will refer to CGL's and Schwab's brief in support of summary judgment as Pl.'s and Def.'s Br., respectively, and to CGL's and Schwab's brief in response to the other party's brief in support of summary judgment as Pl.'s and Def.'s Answers, respectively. Additionally, I will refer to the Resident Defendant's brief in support of summary judgment as Resident Defs.' Br. and to the Resident Defendants' brief in response to the Plaintiff's brief in support of summary judgment as Resident Defs.' Answer.

[5] Although Wise was a successful bidder at the September 27, 2008 public auction, he then established CGL to take title in May 2009. *See Wise Dep.* 13-14, Jan. 18, 2012.

adversary actions against the individuals residing on Lots 1-44 seeking a determination of

consider the conveyance of Lot 45 a violation of Restriction No. 1.[6] *See id.* To gain further confirmation, Schwab filed a motion with the Bankruptcy Court to approve the sale of Lot 45 to CGL as free from Restriction No. 1. The Bankruptcy Court granted Schwab's motion on March 10, 2009.[7] *See Def.'s Br.*, Exh. D. The sale of Lot 45 to CGL closed on May 7, 2009. *See Def.'s Br.* at 7.

During the finalization of the Lot 45 sale, Schwab, Goodman, and Aaron Marines, Esquire, counsel for the Resident Defendants, entered into significant discussions about the sale of Lots 1-44 to the Resident Defendants. *See Resident Defs.' Br.*, Exh. H. The Board of Supervisors for the Township noted at their March 4, 2009 meeting that after appropriate action by Goodman, they would be able to lift Restriction No. 1 from Lots 1-44. *See id.*, Exh. O. On August 5, 2009, the Township approved the removal of all the restrictions, including Restriction No. 1, by means of a document titled "Declaration." *See id.* Thereafter, the Township would not be responsible for maintenance of the roads and water and sewer system; instead, a homeowner's association would be established to handle infrastructure issues. *See Resident Defs.' Br.*, Exh. X. On August 7, 2009, Schwab emailed CGL with a draft of the unsigned Declaration and CGL acknowledged receipt of the Declaration by contacting a Township representative with questions about the document. *See id.*, Exh. S and Exh. T.

In furtherance of the plan to sell Lots 1-44 to the Resident Defendants, Schwab filed adversary actions against the individuals residing on Lots 1-44 seeking a determination of whether the homes located on the lots were mobile homes that belonged to their owners or were

---

[6] Yoder believed that Restriction No. 1 did not apply to the sale of Lot 45 because no residence had been built on Lot 45 and Restriction No. 1 only referred to transferring ownership to those having residences in Parkside. Goodman confirmed Yoder's belief. *See Resident Defs.' Br.*, Exh. F.

[7] CGL's title insurer, First American, requested that Schwab obtain an order from the Bankruptcy Court approving the sale of Lot 45 to CGL. *See Pl.'s Br.* at 6.

permanent structures that belonged to the bankruptcy estate. Once the Township approved the removal of Restriction No. 1 by means of the Declaration, the Bankruptcy Court granted an order allowing Schwab to settle the adversary actions with the Resident Defendants by permitting them all to purchase their individual lots for $37,000 each. *See Defs.' Br.*, Exh. G. On October 8, 2009, Schwab filed Notices of Settlement in the Bankruptcy Court which declared that Lots 1-44 would be sold to the Resident Defendants, "free and clear of all liens and encumbrances," and these notices were docketed and sent to a list of recipients including Yoder, as CGL's counsel. *See, e.g., In re Vistacare*, 5:07-bk-51116 (M.D. Pa. Bankr. 2007) (Dkt. 213).

On November 23, 2009, Schwab filed a motion for court approval of the sale of the common areas and remaining lots in Parkside to the Parkside Homeowner's Association. *Def.'s Br.*, Exh. H. The Bankruptcy Court granted the motion on September 17, 2010, approving the sale of the common areas and remaining plots.[8] *Id.*, Exh. I. On December 14, 2009, Schwab and representatives of the Township signed the Declaration, thereby making it effective. *See Resident Defs.' Br.*, Exh. X. The Declaration was recorded on January 6, 2010, and the sales of Lot 1-44 were finalized thereafter. *See id.*; *see Def.'s Mot.* ¶¶ 22-23.

A party seeking to sue a court-appointed bankruptcy receiver must first obtain leave of the appointing court. *See Barton v. Barbour*, 104 U.S. 126, 128 (1881). Accordingly, on July 30, 2010, CGL filed a Motion for Leave with the Bankruptcy Court of the Middle District of Pennsylvania to file suit against Schwab in the Lancaster County Court of Common Pleas. On October 22, 2010, the Bankruptcy Court granted CGL's motion to sue Schwab—a decision later affirmed by the Middle District of Pennsylvania and the Third Circuit. *In re Vistacare Group, LLC*, 2011 WL 2111997, at *3 (M.D. Pa. May 26, 2011) (stating that a party proposing to sue a

---

[8] Restriction No. 1 limits the transfer of fee title to parties having residences constructed upon "their" lots. It does not cover common areas or lots upon which no residence has been constructed.

4

trustee must make out a prima facie case against the trustee, showing that its claim is "not without foundation"); *In re Vistacare Group, LLC*, 678 F.3d 218, 235 (3d. Cir. 2012) (noting that the "not without foundation" standard involves a greater degree of flexibility than the Rule 12(b)(6) motion to dismiss standard).

On June 24, 2011, CGL filed suit under 42 U.S.C. § 1983 against Schwab in the Lancaster County Court of Common Pleas alleging that Schwab violated its due process rights under the Fifth Amendment.[9] On July 20, 2011, Schwab filed a petition for removal on the basis that he was a federal officer of the Bankruptcy Court and the case was removed to the Eastern District of Pennsylvania. The case is now before me, and cross-motions for summary judgment having been filed and fully briefed, the matter is ripe for determination.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of material fact by pointing to evidence

---

[9] 42 U.S.C. § 1983 states that, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992). In reviewing a motion for summary judgment, the Court does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion. *Siegel Transfer v. Carrier Express*, 54 F.3d 1125, 1127 (3d Cir. 1995). When confronted with cross-motions for summary judgment, the Court must rule on each party's motion on an individual and separate basis, and determine for each side whether a judgment may be entered in accordance with the summary judgment standard. *Marciniak v. Prudential Financial Ins. Co. of America*, 184 Fed. Appx. 266, 270 (3d Cir. 2006).

## III.   DISCUSSION

CGL contends that its due process rights were violated when Schwab and the Township improperly abrogated Restriction No. 1, and Schwab subsequently sold Lots 1-44 to the individual residents. CGL seeks an injunction rescinding the sales of Lots 1-44 to the Resident Defendants. The short but conclusive answer is that CGL had no property rights in Restriction No. 1. First, because Restriction No. 1 was not property nor did it create any property rights.[10] Second, the sale of Lot 45 to CGL did not give CGL property rights (or any other rights) as to Lots 1-44. Third, the Bankruptcy Court approved the sale of Lot 45 to plaintiff as free of Restriction No. 1. In other words, neither the conveyance of Lot 45 to plaintiff nor anything in the wording of the restriction conveyed a beneficiary status on CGL.

As CGL had no property rights, it cannot claim to have been deprived of due process associated with those rights. Nonetheless, I will assume for purposes of further explaining CGL's plight that CGL had due process rights. As discussed in detail below, however, CGL was

---

[10] Restriction No. 1 did two things: it provided if there were any problems at Parkside (road maintenance, snow removal, etc.), it would only have to deal with one person, not 45. It also provided notice that Parkside lots were not for sale.

6

not deprived of due process because it received notice of the plan to abrogate Restriction No. 1

and it did not object, and it received notice of the plan to sell Lots 1-44 and did nothing. Finally,

CGL's claim that Restriction No. 1 was not properly abrogated fails under all possible analyses.

Restriction No. 1 was not a restrictive covenant, but even if it was, the Bankruptcy Court

approved the removal of Restriction No. 1 and the subsequent sale of Lots 1-44.

## A. **CGL Has No Beneficiary Status**

There is nothing in the provisions of Restriction No. 1 that confers any beneficiary status

on CGL. Examination of the language of the restriction reveals that it intended to benefit only

the Developer, his heirs and assigns. CGL cannot claim, nor does it provide any evidence, that it

is the Developer, his heir or assign. Thus, at the time Restriction No. 1 was recorded in 1984,

CGL, which was not established until 20 years later, had no basis upon which to claim

beneficiary status or upon which to enforce the restriction.

In order to enforce the restriction as it pertains to Lots 1-44, or to have the sales of the

lots rescinded based on a finding that the abrogation of Restriction No. 1 was improper, CGL

must have become an intended beneficiary of Restriction No. 1 when it purchased Lot 45.

However, once again, CGL has not pointed to any evidence, nor does any reading of the

restriction, show that its acquisition or ownership of Lot 45 conferred any such benefit.[11] As

discussed previously, the parties determined at the time of the sale of Lot 45 that Restriction No.

1 did not apply to Lot 45 because there was no residence constructed on the property. CGL

cannot claim that it somehow acquired the right to enforce Restriction No. 1, or any other

restriction, as it pertained to the neighboring lots. Accordingly, without evidence to show that

---

[11] CGL does not refer to any language within Restriction No. 1 to show that the restriction intended to benefit a third-party purchaser of a lot within Parkside. Nor does CGL point to any evidence within its deed to Lot 45 to show that the purchase of Lot 45 conferred the right of enforcement of the restriction as it pertained to Lots 1-44.

7

CGL was an intended beneficiary of the restriction, CGL has no right to enforce Restriction No. 1, nor does it have a basis upon which to claim that the abrogation of the restriction, and the subsequent sales of Lots 1-44, were improper.

Despite CGL's failure to clearly explain how the purchase of Lot 45 gave it any rights, to drive the nail deeper, I will assume that it did and that CGL has the right to notice and the opportunity to present its objections regarding the sales of Lots 1-44.

**B.     CGL was Afforded Due Process**

"To state a claim under § 1983 for deprivation of procedural due process, a plaintiff must allege (1) he was deprived of an individual interest that is encompassed within the [Fifth] Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Mulholland v. Government County of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013). The deprivation of life, liberty, or property must be preceded by notice and an opportunity to be heard. *Hamdi v. Rumsfield*, 542 U.S. 507, 533 (2004). Due process is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). While some form of hearing is typically required prior to the final deprivation of a property interest, "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

For CGL to successfully argue that it was denied due process, CGL must first show that it was deprived of a property interest.[12] CGL is understandably vague regarding what property interests it was deprived of, and their source, when Lots 1-44 were sold; however, CGL does

---

[12] The requirement that a petitioner must be able to show some deprivation of property to establish a due process claim is also relevant to the injury-in-fact requirement of standing. While this memorandum focuses upon CGL's due process claim, a discussion of whether CGL meets standing requirements would also reveal a barrier to CGL's ability to litigate its claim.

8

allege a variety of harms including encroachments upon Lot 45, unsettled title issues resulting in complex and expensive litigation, impediments in the development of Lot 45 as it was originally intended and problems arising with infrastructure maintenance.[13]  *See Pl.'s Answer* at 14-19.

While I agree with Schwab that these harms are unsupported and speculative, I will accept them to illustrate CGL's problems with the use and enjoyment of its property interest in Lot 45.  Accordingly, I will go further and assume that CGL has sufficiently alleged a deprivation of property interest for the purposes of deciding the present motion.

The issue then is whether CGL was afforded adequate notice and opportunity to be heard. CGL disputes that it was given notice and the opportunity to be heard prior to the sale of Lots 1-44, free from Restriction No. 1, to the Resident Defendants.  CGL claims that it was not informed that Schwab was preparing to sell the lots to the Resident Defendants until early August 2009 when the Township met and voted upon the removal of Restriction No. 1 from Lots 1-44 by means of the Declaration. *See Pl.'s Answer* at 6.  CGL asserts that it was not given notice of the Township's planned vote prior to the August 5, 2009 meeting. *See Pl.'s Br.* at 12. Between August 2009 and December 2009, when the Declaration was signed, CGL claims that it waited for Schwab to initiate legal action in the Lancaster County state court to seek removal of the restrictive covenant. *See Pl.'s Answer* at 7.  CGL asserts that it only became aware of the sales of the lots to the Resident Defendants after Wise, in the exercise of due diligence, checked the Lancaster County land records and discovered, in mid-January 2010, that some of the lots had been sold. *See Pl.'s Br.* at 12; *see also Wise Dep.* 63.

CGL's claim that it was not given notice and opportunity to be heard regarding the abrogation of Restriction No. 1 and the sale of Lots 1-44 free from the restriction is contradicted

---

[13] Just how CGL's concerns – however serious they may be – become rights is not explained.  While these matters may be of concern, they are not property rights.

9

by the record. The record reveals that Wise had actual notice that the Township intended to abrogate Restriction No. 1 in order to sell Lots 1-44 and that the Bankruptcy Court was going to approve the sale of Lots 1-44 free from all restrictions which necessarily included Restriction No. 1. Furthermore, the record shows that although CGL had the opportunity to present its objections regarding the sale to both the Township and the Bankruptcy Court, CGL did not do so.

In his deposition, Wise conceded that as early as April, May, or June of 2009, he was aware that Schwab was considering selling the lots to the individuals residing upon them. *See Wise Dep.* 33-34. Moreover, CGL was clearly aware of the Township's intention to sell the lots as of August 7, 2009, when CGL was provided with an unsigned draft of the Declaration which expressly provided for the removal of Restriction No. 1 from Lots 1-44. *See Resident Defs.' Br.*, Exh. S. Additionally, the August 7, 2009 email conveying the draft Declaration informed CGL that Schwab and the Township intended to abrogate Restriction No. 1 for the purposes of selling Lots 1-44. *See id.* Wise acknowledged receipt of the Declaration by contacting a Township representative with questions regarding the effects of the Declaration on the title of Lot 45. *See Resident Defs.' Br.*, Exh. T. After receiving the August 7, 2009 email, CGL could have presented its objections in order to ensure that its property interests were protected before the Declaration was finalized and recorded in January 2010.[14] However, as CGL admits, it did not voice its objections until after the sales were completed. *See Pl's Answer* at 8. Thus, CGL was provided with notice and the opportunity to be heard at a meaningful time and in a meaningful manner concerning the Declaration, but failed to utilize it.

---

[14] Schwab argues that all involved parties assumed that CGL's silence meant that CGL accepted the removal of Restriction No. 1 and reasonably relied on its acceptance. Schwab asserts that if CGL had presented its objections after the August 7, 2009 email, the parties would have addressed CGL's objections. *See Def.'s Answer* at 17.

10

In addition to the ongoing discussions between the Township and Schwab, the evidence shows that CGL was aware of contemporaneous bankruptcy proceedings related to the sale of Lots 1-44. On October 16, 2009, Yoder mailed a letter to Wise including the Notices of Settlement from the Bankruptcy Court.[15] *See Def.'s Br.*, Exh. L. The Notices of Settlement provided that the sales of the lots were authorized, "free and clear of all liens and encumbrances," and stated that, "objections to any of the above settlements must be written in writing and filed with the Clerk of the United States Bankruptcy Court . . . within twenty-two (22) days of the date of this Notice." *See id.* The statement that the sale of the lots would occur free of any encumbrances directly addresses CGL's objections and indicates to CGL that its issues regarding Restriction No. 1 would be relevant concerns to address during the provided objection period. The Notices of Settlement not only alerted CGL to the pendency of the sales, but also gave CGL the opportunity to present its objections before completion of the sales. If CGL had raised its objections during the provided period, the Bankruptcy Court would have formally reviewed CGL's objections and responded prior to the finalization of the sales. However, after receiving the Notices of Settlement, CGL again failed to take any action. CGL was provided with adequate notice and opportunity to be heard at a meaningful time and in a meaningful manner but failed to utilize it.

Additionally, CGL's belief that the Bankruptcy Court did not have the authority to sell Lots 1-44 had no bearing on its due process rights. CGL states that the authorization of the Bankruptcy Court was a "necessary, but not a sufficient, precondition," to the sale of Lots 1-44. *See Pl.'s Answer* at 7. Thus, CGL concedes in this statement that it believed the authorization of the Bankruptcy Court was a necessary step in the process of selling the lots. Even if CGL

---

[15] Yoder's October 16, 2009 letter addressed to Wise stated, "Apparently at least twenty-eight (28) residents have agreed to pay $37,000 for their lots in the Parkside Manor/VistaCare community. Notices of Settlement, including names and lot numbers of the prospective purchasers are enclosed." *See Def.'s Br.*, Exh. L.

believed that the Bankruptcy Court was the first of several legal proceedings by which

Restriction No. 1 would be removed, CGL was aware that its concerns regarding its interests in

Lots 1-44 were issues relevant to the proceedings and that the Bankruptcy Court had provided an

objection period for interested parties.

      CGL fails to establish a due process claim under the Fifth Amendment. Even if I accept

that CGL was deprived of a property interest in Lot 45 when Lots 1-44 were sold in violation of

Restriction No. 1, the record demonstrates that CGL was provided with adequate notice and a

meaningful opportunity to be heard in accordance with due process guarantees.

### C.    **Removal of Restriction No. 1 was Proper**

      In addition to its federal due process claim, CGL also alleges an independent state law

claim. Specifically, CGL asserts that under Pennsylvania law, judicial proceedings are the

exclusive method by which a restrictive covenant can be removed; therefore, Schwab's use of

the Declaration to abrogate Restriction No. 1 was in violation of Pennsylvania law. Conversely,

Schwab argues that Restriction No. 1 was not a restrictive covenant, but merely a note on

Parkside's subdivision plan with characteristics that made it an ordinance. Therefore, the

Township was authorized by the Pennsylvania Municipalities Planning Code to grant a waiver.

*Def.'s Answer* at 9; *see also* 53 P.S. § 10512.1(a).[16]

---

[16] The Pennsylvania Municipality Code states that, "the governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed." Indeed, if Restriction No. 1 was a subdivision ordinance, then Schwab did not improperly remove it by means of the Declaration.

The short answer to CGL's contention is that Restriction No. 1 was not a restrictive covenant. A covenant is a promise.[17] Restriction No. 1 was not a promise by anyone to anyone for anything.

Even if Restriction No. 1 was a restrictive covenant, CGL has not pointed to any authority to support its claim that under Pennsylvania law, judicial proceedings are the exclusive method to remove a restrictive covenant. CGL does not point to any specific Pennsylvania rule or statute; rather, CGL relies upon the Pennsylvania Supreme Court's decision in *Vernon Township Volunteer Fire Department, Inc. v. Connor*, 579 Pa. 364, 376 (Pa. 2004). However, *Vernon Township* does not state that judicial proceedings are the exclusive method for removal of a restrictive covenant under Pennsylvania law. Rather, *Vernon Township* shows that the removal of a restrictive covenant might be accomplished in a variety of ways including by agreement. *See id.* at 376 ("A restrictive covenant may be discharged if there has been acquiescence of in its breach by others, or an abandonment of the restriction. In addition, changes in the character of the neighborhood may result in the discharge of a restrictive covenant."). Therefore, CGL's characterization of Pennsylvania law is incorrect.

Furthermore, even if CGL was correct in its stated standard for removal, it does not explain why the Bankruptcy Court's proceedings do not suffice under this standard. A bankruptcy court may exercise plenary power over "core proceedings" including matters concerning the administration of the estate and other proceedings affecting the liquidation of the assets of the estate. *See* 28 U.S.C. §§ 157 (b)(1)-(2). Furthermore, although the Bankruptcy Act does not expressly authorize the Bankruptcy Court to do so, the power to sell property of the bankruptcy estate free of encumbrances is granted by implication. *See In re Trans World*

---

[17] The typical restrictive covenant is one where, in order to induce the present purchasers of a real estate developer's lots, he agrees to protect their values by agreeing not to cut lot size of future sales.

13

*Airlines, Inc.*, 322 F.3d 283, 292 (3d Cir. 2003) (citing *Van Huffel v. Harkelrode*, 284 U.S. 225, 227 (1931)). A bankruptcy court has *in rem* jurisdiction over the discharge of a debt thereby allowing it to determine all claims that anyone, whether named in the action or not, has to the property or thing in question. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004).

Although CGL asserts that the Bankruptcy Court does not have sufficient authority to approve the sale of Lots 1-44, CGL does not point to anything as support for its allegations. CGL provides no explanation as to why any Pennsylvania state law would supersede the approval of a federal bankruptcy court to which exclusive jurisdiction over core bankruptcy proceedings has been given under 28 U.S.C. § 157(b). Here, the Bankruptcy Court explicitly stated in the Notices of Settlement that the sale of the lots was made free and clear of encumbrances. From the evidence provided by Schwab, the Bankruptcy Court's authorization was in accordance with 28 U.S.C. § 157(b) and relevant case law. Without explanation as to why the Bankruptcy Court's authorization of the sale of Lots 1-44 free and clear of any encumbrances was insufficient or was further subject to Pennsylvania state law, CGL is unable to demonstrate that the abrogation of Restriction No. 1 was done unlawfully.

## III.    CONCLUSION

CGL had no due process rights and is not a beneficiary and therefore, it did not have the right to enforce Restriction No. 1 as to Lots 1-44 or set aside the abrogation of the restriction by means of the Declaration. Even if CGL had these rights, I find that there is no violation of CGL's rights, due process or otherwise, because CGL received sufficient notice from the Bankruptcy Court and the Township, and it was afforded an opportunity to be heard concerning any objection it had to the sales of Lots 1-44. Furthermore, I conclude that CGL has failed to

14

demonstrate that Restriction No. 1 was improperly abrogated under Pennsylvania law.

Moreover, the abrogation was approved by the Bankruptcy Court.  Thus, I shall grant summary

judgment for Schwab and the Resident Defendants and deny summary judgment for CGL.